Case 3:22-cv-00 26(9

3:22-cv-00260

1. Plantiff Wood is a resident of Nevada.

2. Plantiff Wood requests her case be heard, claiming "Diversity" of states.

3. Defendants reside in California.

4. Wood submits her $402. filing fee.

Submitted,

Andrea Wood

Pro Se

6/7/2022

FILED ___ RECEIVED ___
ENTERED ___ SERVED ON ___
COUNSEL/PARTIES OF RECORD

JUN 0 8 2022

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY



Paid Amt $ 402 00   Date 6/8/2022
NURNC
Receipt # 5570   Initials CWM

FILED ___ ENTERED
___ RECEIVED
___ COUNSEL/PARTIES OF RECORD

MAY 1 2 2022

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
                              DEPUTY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

___ RECEIVED
___ ENTERED
___ SERVED ON
COUNSEL/PARTIES OF RECORD

JUN 0 8 2022

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____
                              DEPUTY

TAYLOR PACKWOOD and
ANDREA WOOD,

        Plaintiff,

        v.

COUNTY OF CONTRA COSTA, a
government entity; CONTRA COSTA
CHILDREN AND FAMILY SERVICES,
a government entity; OFFICE OF THE
CONTRA COSTA SHERIFF, a government
entity; DAVID LIVINGSTON, in his official
capacity as Sheriff of Contra Costa County;
KELLIE CASE, in her official and individual
capacity; EDYTH WILLIAMS, in her
official and individual capacity; CECELIA
GUTIERREZ, in her official and
individual capacity; ACADIA CHIDI, in
her official and individual capacity;
ERICA BAINS; RAVINDER BAINS;
and DOES 1-100, Inclusive,

        Defendants.

3:22-cv-00260

Case No.:    3:22-cv-00219

Second Amended

**COMPLAINT**

JURY TRIAL
DEMANDED

**PRELIMINARY STATEMENT 42 U.S. § 1983**

- This is a civil rights action arising out of the illegal removal and

T.P. and A.W.

T.P.
3130 Balfour Road
Suite D #117
Brentwood, CA 94513

A.W.   P. O. Box 5923
Reno, NV 89513

Plaintiffs,

vs.

COUNTY OF CONTRA COSTA, a

government entity; CONTRA COSTA
CHILDREN AND FAMILY SERVICES,
a government entity; OFFICE OF THE
CONTRA COSTA SHERIFF, a government
entity; DAVID LIVINGSTON, in his official
capacity as Sheriff of Contra Costa County;
KELLIE CASE, in her official and individual
capacity; EDYTH WILLIAMS, in her
official and individual capacity; CECELIA
GUTIERREZ, in her official and
individual capacity; ACADIA CHIDI, in
her official and individual capacity;
ERICA BAINS; RAVINDER BAINS;
and DOES 1-100, Inclusive,

Defendants

Case #

**COMPLAINT**

JURY TRIAL
DEMANDED

## FEDERAL DISTRICT COURT OF NEVADA
### 42 U.S. Code § 1983

1. Plaintiff T.P. is a resident of Contra Costa County.
2. Co-Plaintiff A.W. is a resident of the state of Nevada.

detention of the Plaintiff, TAYLOR PACKWOOD, when a minor, from his mother and his mother's home by Defendants, acting under color of state law or in collusion with others acting under color of state law, in violation of Plaintiff's rights under 42 U.S.C. § 1983, the Fourth Amendment, and the Due Process clause of the Fourteenth Amendment to the U.S. Constitution.

- Briefly, Plaintiff alleges that on August 17, 2017, responding to false allegations, without Access Order, without Order of Temporary Removal, without warrant, without consent, and with no reason to believe the allegations were true, acting under color of law, County, its agencies CFS and Sheriff intentionally deprived Plaintiff of his rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment by forcibly removing from his mother's residence and subsequently detaining him.

- Plaintiff also alleges the existence of a custom, practice or policy maintained by Defendants Contra Costa County, Contra Costa Children and Family Services, and the Office of the Contra Costa County Sheriff to seize, remove and detain minor such as Plaintiff under color of law, without legal justification, and without consideration of the requirements of applicable California law.

2

- Plaintiff seeks monetary damages and declaratory judgment, as appropriate.

## JURISDICTION AND VENUE

- This Court has original federal subject matter jurisdiction as to all civil rights claims under 42 U.S.C. § 1983, and questions of federal constitutional law. Federal jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. The District Court should exercise supplemental jurisdiction over common law tort claims because all of the claims arise from a common nucleus of operative facts that are so intertwined that they cannot reasonably be separated.

- Venue is proper pursuant to 28 U.S.C. § 1402 because at all times relevant all Parties resided in this judicial district and all of the wrongful acts and/or omissions complained of occurred in this judicial district.

## PARTIES

- Plaintiff TAYLOR PACKWOOD (hereafter, "Plaintiff" or "T.P.") is a natural person residing at 3130 Balfour, D #117, Brentwood, California 94513. He

3

reached the age of majority on May 13, 2021. During the period relevant to this Complaint, he was a minor.

- Plaintiff ANDREA WOOD (hearafter, "Wood" or co-plaintiff) is a resident of Reno, NEVADA.

- Defendant County of Contra Costa (hereafter, the "County" or "Contra Costa") is a government entity within the State of California.

- Defendant Contra Costa Children and Family Services (hereafter, "CFS") is a government entity within the County.

- Defendant Office of the Contra Costa County Sheriff is a government entity within the County.

- Defendant David Livingston is a natural person and, during the period relevant to this Complaint, was Sheriff of Contra Costa County.

- Defendant Erica Bains is a natural person domiciled in the State of California, County of Contra Costa.

- Defendant Ravinder Bains is a natural person domiciled in the State of California, County of Contra Costa. He is the husband of Erica Bains.

- Defendant Edyth Williams is a natural person domiciled in the State of

4

California, County of Contra Costa, and is an employee, officer and/or agent of CFS.

- Defendant Kellie Case is a natural person domiciled in the State of California, County of Contra Costa, and is an employee, officer and/or agent of CFS.

- Defendant Cecilia Gutierrez is a natural person domiciled in the State of California, County of Contra Costa, and is an employee, officer and/or agent of CFS.

- Defendant Acacia Chidi is a natural person domiciled in the State of California, County of Contra Costa, and is an employee, officer and/or agent of CFS.

- Defendants DOES 1-100 are persons or entities whose identities or liability are unknown to Plaintiff at this time, and thus are fictitious names which Plaintiff will amend when they are known. Upon information and belief, DOES 1-100, inclusive, are liable for the acts alleged herein.

## FACTUAL ALLEGATIONS AS TO ALL CAUSES OF ACTION

- At all relevant times prior to August 2017, T.P. lived with his mother,

5

Andrea Wood (hereafter, "Wood" or "Mother") and his two siblings (known as H.P. and K.P.) in their 4000 square foot Orinda, California home, and Wood provided for her children love plus all of the material necessities and luxuries of an affluent lifestyle, including nutritious food, clothing, medical care, education, sports, and extracurricular activities.

- In or about early 2017, Defendant Erica Bains devised a scheme intended to take custody of one or more of Wood's children. This involved making false allegations of child neglect against Wood and then applying for foster care of one or more of Wood's children. Defendant Ravinder Bains agreed to participate in this scheme.

- Beginning in or about 2010, Steffi Guggenbichler ("Guggenbichler"), who is from Austria, was a live-in nanny for Wood and her children.

- Eventually, due to her children's increasing ages and to her understanding of relevant immigration laws, Wood could no longer employ Guggenbichler as a nanny, though she continued to make room and board at her home available to Guggenbichler.

- Guggenbichler joined Erica Bains and Ravinder Bains in the scheme against Wood.

6

- On or about the first week of August, 2017, according to the plan with Erica Bainsand Ravinder Bains, Guggenbichler wrote a letter to Wood, demanding $100,000, and stating that if Wood did not capitulate, that Guggenbichler would spread lies about Wood, lies that Wood understood to constitute false criminal allegations. Wood did not agree to Guggenbichler's demands.

- Guggenbichler then left the United States. Just prior to her flight from the country, Guggenbichler trashed Wood's house, toppling some furniture, emptying cabinets, and spreading clean clothes around on the floor, and various other acts.

- On or about August 15, 2017, Wood travelled to New York on business. As she had done many times, Wood invited her mother – the children's maternal grandmother – Sandra Wood DeUdy ("Grandma") to come and stay while she was out of town.

- Erica Bains called Defendants CFS and the Office of the Sheriff (David Livingston), and falsely stated that Wood's children were in danger.

- On August 17, 2017, acting under color of law upon the false allegations made by Erica and Ravinder Bains, without Access Order, without Order of

7

Temporary Removal, without a warrant, without consent, Defendant Cecilia Gutierrez (hereafter, "Gutierrez") and Sheriff Livingston arrived at Wood's home and forcibly entered, intent on taking the children.

- At all relevant times, Gutierrez and the Sheriff knew of the legal standards required to warrant the seizure of children. At no time did Gutierrez or any CFS agent or any Sheriff reasonably believe that Wood's children had been seriously injured, or that they were in imminent danger. The children were in the care of their Maternal Grandmother while Wood was off at work. At no time did the County Sheriff obtain any kind of warrant with regard to Wood, her house, or her children. At no time prior to arriving at Wood's house on August 17, 2017 did CFS conduct any meaningful investigation into the false allegations made by the Bainses. At no time prior to arriving at Wood's house on August 17, 2017 did the County Sheriff conduct any meaningful investigation into the false allegations made by the Bainses.

- On August 17, 2017, CFS, Sheriff and Gutierrez forcibly entered Wood's house without knocking. Acting under color of law, CFS, Sheriff and Gutierrez demanded to take the children. Grandma objected to the seizure, and Sheriff stated that if Grandma interfered with their seizure of the children, that she would be

8

placed under arrest. No Sheriff indicated what crime, if any, Grandma was suspected of committing.

- The house met the codified standard of living conditions, but CFS and Sheriff falsified information about the living condition of the house as an excuse for the search.

- CFS, Sheriff and Gutierrez then forcibly removed all three children, including Plaintiff, from the home, over Grandma's objections, and took them into custody. The Maternal Grandmother was threatened with arrest for attempting to the shield the children from unwarranted removal, kidnapped.

- Defendant Kellie Case falsely testified in numerous ways. For example, she testified that she had no communication with H.P. about his being hit by Guggenbichler. Later, Case admitted this she did have such communications. Defendants falsely accused Wood of having struck H.P. and concealed their knowledge that it was Guggenbichler who had struck him.

- Defendant Acacia Chidi (hereafter, "Chidi") falsely testified that she has only one criminal conviction, which was untrue. In fact, she had more than one.

- Knowing that no valid reason existed to find Wood an unfit parent, once

9

the children were in custody, Defendants Edyth Williams and Case began attempting to coerce the children into testifying falsely about Wood having hit Plaintiff in the ensuing court proceedings.

- Plaintiff, then identified as T.P., would subsequently testify that Erica Bains and other Defendants had told him to lie, such as to falsely say that his mother hit H.P. with a metal rod and to say that H.P.'s bruises were caused by Wood, when in fact they were the result of a fight with Guggenbichler. T.P. testified he was either with or nearby his mother at the time and testified his mother never hit H.P. In fact H.P. also wrote that H.P. was never hit by his mother. Wood never hit any of her children.

- K.P., daughter of Wood testified that it was Child Protective services that told her that her mother Wood had a "whip" while she was being interviewed by the CIC (Children's Interview Center).        K.P. stated no other knowledge other than what CPS was telling her.

- T.P. has testified tha

- County-approved therapist Dr. Mark DeManus conducted a year-long investigation, and concluded that there was no better place for the children than with their mother, and he recommended immediate reunification of the family. A

second doctor, psychologist David Dahl, likewise found no reason to separate the children from Wood, and also recommended that they be returned.

- Despite these recommendations, two of the children (H.P. and K.P.) remained in custody, detained from Wood. CFS continued to attempt to convince the children that their mother was an unfit and unsafe parent, and that they should never be allowed to reunite with their mother.

- Plaintiff resisted the coercion and refused to testify falsely. In December 2017, after four months of captivity, Plaintiff was released back to Wood.

- Plaintiff was emotionally damaged in the custody of CFS, but considerably improved once back in custody and care of his mother, Wood. Plaintiff was in Advanced Placement classes at school.

- However, Plaintiff's brother, H.P., did not successfully resist Defendants' pressure. As the weeks of captivity wore on, H.P. was told that he was going to be subjected to "escalated care", a euphemism for greater isolation from his mother, and from the real world. H.P. became suicidal, as would be expected.

- The CFS Defendants continued to demand that H.P. testify falsely at trial. He was instructed to say that his mother had hit him many times, and that he

11

had told all three of his teachers during that period. Wood never hit H.P., or any of her children. No reports of any such hitting of H.P. were made against Wood during that period.

- CFS Defendants' intentional infliction of emotional distress upon of H.P. crossed the line into torture as defined under 18 U.S.C. §§ 2340-2340A. Their mistreatment of the children included drugging H.P. and K.P. unnecessarily, abusively, without their consent and without Wood's knowledge or consent, and denying Wood copies of H.P.'s and K.P.'s medical and school records, all in violation of the Family Educational Rights and Privacy Act ("FERPA"), codified in 20 U.S.C. § 1232g and 34 C.F.R. § 99. CFS intentionally transformed H.P., a formerly well-adjusted adolescent boy, into a terrified, confused and suicidal child.

- Prior to his treatment by CFS Defendants, H.P. had no history of mental or emotional illness of any sort. Since being in CFS captivity, H.P. has been hospitalized several times in response to his mistreatment by CFS Defendants. Plaintiff is aware that his little brother was tortured.

- Contra Costa, all the CFS Defendants, Sheriff and Livingston knew or should have known of the wrongful actions alleged herein against Defendants, as

12

they were widely publicized. Those Defendants knew or should have known that said acts were wrongful and illegal.

- The wrongful actions of the CFS Defendants, Office of the Sheriff and Livingston were motivated, in substantial part, by policies, customs and practices of Contra Costa County and/or the Office of the Sheriff that place removal of children over constitutional rights.

## CAUSES OF ACTION

- **Illegal Seizure in Violation of the Fourth Amendment and 42 U.S.C. § 1983**

- Plaintiff reasserts and realleges the allegations contained in paragraphs 1-46 above as if fully set forth herein.

- Defendants, acting in concert and collusion, violated Plaintiff's right to be free of an illegal seizure under the Fourth Amendment and 42 U.S.C. § 1983. Those Defendants employed by government entities acted under color of state law. All other Defendants willfully and deliberately colluded with the others in the same scheme to violate Plaintiff's civil and constitutional rights.

- Moreover, Defendants thereafter engaged in illegal acts such as giving false testimony, falsifying information in official reports, and suborning perjured

13

testimony, in order to support and further the illegal seizure and detention of Plaintiff from his home and his mother.

• Defendants used coercive tactics in an attempt to suborn perjured testimony from him against Wood, his mother.

• Defendants knew or should have known that their actions were illegal and in violation of clearly-established rights under federal and/or state law.

• Defendants' illegal actions arose, in substantial part, from the negligent failure of CFS, Contra Costa County and Office of the Sheriff to adequately train, screen and supervise employees.

• Defendants' illegal actions arose, in substantial part, from customs, policies and/or practices of Contra Costa County and the Office of the Sheriff that promote removals of minor children without adequate investigation and in violation of law.

• Due to Defendants' illegal actions, Plaintiff experienced pain, suffering and emotional trauma. Plaintiff suffers from Post-Traumatic Stress Disorder (PTSD) as a result of Defendant's actions.

• Due to Defendants' illegal actions, Plaintiff suffered monetary damages

14

in an amount as yet to be determined but in no event less than five million dollars ($5,000,000).

- Defendants are jointly and severally liable for Plaintiff's injuries.

- **Illegal Removal and Detention in Violation of the Fourteenth Amendment and 42 U.S.C. § 1983**

- Plaintiff reasserts and realleges the allegations contained in paragraphs 1-56 above as if fully set forth herein.

- Defendants, acting in concert and collusion, violated Plaintiff's right to due process of law under the Fourteenth Amendment and 42 U.S.C. § 1983. Those Defendants employed by government entities acted under color of state law. All other Defendants willfully and deliberately colluded with the others in the same scheme to violate Plaintiff's civil and constitutional rights.

- Moreover, Defendants thereafter engaged in illegal acts such as giving false testimony, falsifying information in official reports, and suborning perjured testimony, in order to support and further the illegal seizure, removal and detention of Plaintiff from his home and his mother.

- Defendants used coercive tactics in an attempt to suborn perjured testimony from him against Wood, his mother.

15

- Defendants knew or should have known that their actions were illegal and in violation of clearly-established rights under federal and/or state law.

- Defendants' illegal actions arose, in substantial part, from the negligent failure of CFS, Contra Costa County and Office of the Sheriff to adequately train, screen and supervise employees.

- Defendants' illegal actions arose, in substantial part, from customs, policies and/or practices of Contra Costa County and the Office of the Sheriff that promote removals of minor children without adequate investigation and in violation of law.

- Due to Defendants' illegal actions, Plaintiff experienced pain, suffering and emotional trauma. Plaintiff suffered pain, suffering and emotional trauma. Plaintiff suffers from Post-Traumatic Stress Disorder (PTSD) as a result of Defendants' actions.

- Due to Defendants' illegal actions, Defendant suffered monetary damages in an amount as yet to be determined but in no event less than five million dollars ($5,000,000).

- Defendants are jointly and severally liable for Plaintiff's injuries.

16

- **Conspiracy to Deprive Plaintiff of Rights**

  - Plaintiff reasserts and realleges the allegations contained in paragraphs 1-66 above as if fully set forth herein.

  - Defendants' actions amounted to a conspiracy to deprive Plaintiff of his civil and constitutional rights in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

  - This conspiracy imputes liability to all Defendants for the federal civil rights violations committed against Plaintiff.

  - Defendants' illegal actions arose, in substantial part, from customs, policies and/or practices of Contra Costa County and the Office of the Sheriff that promote removals of minor children without adequate investigation and in violation of law.

  - Due to Defendants' illegal actions, Plaintiff experienced pain, suffering and emotional trauma. Plaintiff suffered pain, suffering and emotional trauma. Plaintiff suffers from Post-Traumatic Stress Disorder (PTSD) as a result of Defendants' actions.

    - Due to Defendants' illegal actions, Defendant suffered monetary

17

damages in an amount as yet to be determined but in no event less than five million dollars ($5,000,000).

- Defendants are jointly and severally liable for Plaintiff's injuries.

- **Declaratory Judgment**

    - Plaintiff reasserts and realleges the allegations contained in paragraphs 1-73 above as if fully set forth herein.

    - Defendants' actions violated Plaintiff's rights, and reflected customs, practices and/or policies of Contra Costa County and the Office of Sheriff which affect or may affect other individuals who are similarly situated.

    - Plaintiff is entitled to a declaratory judgment stating that his removal and detention violated his civil and constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983, and further stating that similar actions are forbidden in the future.

- **False Arrest and Intentional Infliction of Emotional Distress under State Law**

    - Plaintiff reasserts and realleges the allegations contained in paragraphs 1-76 as if fully set forth herein.

18

- Defendants' conduct violated applicable California law. Specifically, Plaintiff's removal from his home constituted a tortious act of false arrest, and his subsequent detention constituted an extension and exacerbation of said tortious conduct.

- In addition, Defendants' conduct included the intentional infliction of emotional distress upon Plaintiff.

- Due to Defendants' illegal actions, Plaintiff experienced pain, suffering and emotional trauma. Plaintiff suffered pain, suffering and emotional trauma. Plaintiff suffers from Post-Traumatic Stress Disorder (PTSD) as a result of Defendants' actions.

- Defendants' actions support an award of damages to Plaintiff under applicable California law.

- This Court has pendent jurisdiction to award such damages.

- Due to Defendants' illegal actions, Defendant suffered monetary damages in an amount as yet to be determined but in no event less than five million dollars ($5,000,000).

- Defendants are jointly and severally liable for Plaintiff's injuries.

19

## PRAYER FOR RELIEF

Due to the foregoing, Plaintiff prays the Court for relief as follows:

- For general damages in compensation for physical and emotional pain and suffering actually and proximately caused by Defendants' conduct, in an amount to be determined at trial but not less than $5,000,000;

- For special/actual damages to compensate for past and future monetary loss, including but not limited to medical expenses incurred as a direct and proximate result of Defendants' conduct, in amounts proven at trial and/or deemed appropriate but not less than $2,000,000;

- For punitive damages to punish Defendants, to deter future such conduct, in amounts deemed sufficient to accomplish the purpose of punitive damages;For pre-judgment interest;

- For costs of litigation, in an amount to be proven at trial;

- For reasonable attorney fees as allowed by statute; and

- For a declaratory judgment that describes Plaintiff's seizure, detention and subjection to coercion as having violated Plaintiff's Fourth Amendment right to be free of unreasonable seizure and Plaintiff's

20

Summary Claims of Taylor Packwood

1. It is apparent to the Plaintiffs because Wood and Packwood are aware of several closed door allegations, such as social workers being allowed to testify and no read back given, while Wood was ordered to sit out in the Hallway that there are likely additional allegations and false testimony that Wood and Packwood do not know of. This is against the U.S. Constitution, Sixth Amendment rights of the Plaintiffs to not know and be able to confront their accusers. Wood and Plaintiff need to know and see all of the allegations and accusers as there is so much perjury and coerced testimony and the Plaintiffs have a legal right to know and see all of these "closed door" fabrications. T.P. asks that this be brought forward (as Wood has many times, with no response) so that the **Plaintiffs have a necessary opportunity to show the motives and malice on any and all such accusations. It would be a U.S. Constitutional error to not provide this request at this time, as it should have been made available a very long time ago. It must come from the 9th circuit court - as the county will not nor do the Plaintiffs trust the county to provide this, and the county has been so dishonest in all other dealings with the Plaintiffs. All perjury and lies and coerced, suborned perjuries. Further Wood and T.P. state unequivocally that no one without coercion or financial interest would make claims against Wood or T.P. Plaintiffs have a Constitutional right to confront accusers and provide evidence. This would be an error to continue to allow.**

2. T.P. suffered an assault and battery, being falsely arrested in his home along with his siblings, forcibly by Police officers with weapons, following an unwarranted and without permission break-in by Contra Costa County ("county") and state actors. T.P. was taken away by force against his person, against his will. Armed Contra Costa County Sheriff officers breached an automatic, closed locking property entrance gate, committing illegal trespass to Wood's and Packwood's land and property. T.P. was falsely imprisoned. T.P.s maternal grandmother was threatened with arrest for resisting having her grandchildren seized. Maternal grandmother attested in court records as interviewed by social worker Kellie Case that there was "no reason" for the children to be taken. Despite Wood's childrens repeated pleas to be released, he and his siblings were held by the county and transferred over and over again to numerous horrific foster care, suffering abusive homes. Search and Seizure without a warrant and without exigent danger, is unlawful. The children were in the safe care of their maternal grandmother - without any form of exigent danger. Wood was away from home on work. U.S. Supreme Court Justice Elena Kagan has ruled that if a warrant can be obtained, then it must be obtained. There was every opportunity to obtain a search warrant, in the middle of the day on a weekday with a court order, however the county failed in meeting this requirement.

3. Maternal grandmother told Wood and T.P. that she was told she would not be allowed visitation with her own grandchildren if she was unwilling to lie against Wood. Maternal grandmother, now deceased, was dying and desperate for a visit with her grandson H.P. Maternal grandmother testified that Wood did not thing wrong and was under duress to make a differing statement. Judith Lawrence stated on court records submitted to case 21-15085 that the statement of the maternal grandmother was "very damaging" to their

case. Since when should testimony be blocked - because it harms the prosecutions claims? A visit from H.P. was granted in Florida to Wood's dying mother (maternal grandmother) around June or July 2021, as shown in case records.

4.  T.P. claims that he, his brother and sister had excessive and inappropriate quantities of "psychotropic drugs" pushed upon them, against their wills. A minor child has no legal ability to consent. Evidence of this psychotropic drugging of K.P. has been filed into Appeals case 21-15085. Drugged children can not protect themselves nor resist against adult sexual predators. There are dead children from Contra Costa County 'care', including Federal lawsuit of dead baby, Desiree Ramirez.

5.  Social Workers Kellie Case and Cecella Gutierrez perjured themselves saying Wood had not taken her children in years, to the doctor or dentist. The perjured social workers stated there was not enough food - when there was always an abundance of food. Wood has filed proof against their lies. They lied and said there were fleas and faeces in the house, Wood showed she had a regular pest removal monthly service, who would return for free if ever there was a bug citing, so this could not be so. The house was extensively photographed - yet there was no record of faeces anywhere. Wood provided an extortion letter from the nanny who was fired and dumped clean clothes from closets and drawers upon the floors before working with Bains to call and conspire a False Police Report against Wood. A driver's license was shown for the maternal grandmother who the county alleged could not drive, two cars were available for the maternal grandmother's use. Grandmother also was a homeowner, with her own credit card, and able to call for a taxi. Family worker Paul Sumner was on hand to run any errands. Wood was out of town for a few days working to earn money, like many normal parents do. Wood showed evidence of several active and fully paid cellphones in the home. Wood filed evidence against all of these perjured lies. T.P. claims he was a witness on all matters accused, and none of these allegations are true. T.P. states herein that his mother never did any wrong and these are all attacks of the county, social workers, and Bains to financially enrich themselves.

6.  T.P. has repeatedly testified that county supervised foster care parent Erica Bains, county social worker Kellie Case, and county appointed minors' counsel Judith Lawrence threatened and coerced T.P. and his siblings under threats and duress to testify against their mother, committing suborned perjury. This has been shown with a photo of K.P., Taylor's little sister being led by pushing case worker's hands with a fabric covering over her face forcing her into court to testify and 1. K.P.'s video testimony saying she is being "directed" what she is told to say. 2. Also in T.P. Court testimony of October and December 2017 where Taylor told he was forced to lie. 3. And H.P. testified to threats of "escalated care" in court transcripts which he knew from H.P.'s foster care house 'mom' Wendy (Wendy, herself a former social worker) and the Juvenile Hall threat made against his older brother T.P. All three children have records of forced coercion and suborned perjury. These coerced testimony proofs have been filed in case 21-15085.

7.  The impossible lies from desperate children suffering duress included K.P. saying her father was on Tinder and Kik, when he was dead before either of these sites existed. K.P. testified in the CIC children's interview center that it was CPS who told her her mother had a whip and that K.P. had no earlier knowledge of that. It was her first

knowledge. Under coercion H.P. testified that he told many grade school teachers that he was hit by his mother repeatedly over a three year time period he claimed he made these reports. School teachers are mandated reporters and not one ever made a report during this time period.

8. Contra Costa County ("County") made Instagram commercials of T.P.'s siblings and posted them on the web, where they were easily recognizable. K.P. has a very uncommon copper hair color. Intentional infliction of Emotional Distress (IIED), Traumatizing the Plaintiffs.

9. T.P. states he was molested by a county supervised foster parent, Ravi Bains. In 2019 T.P. gave an interview to the Epoch Times (and another earlier news interview in 2018), when he was a minor. He was identified as "S.P." where he exposed the County Group Home nightmare of sex with minors and forced drugging experience: https://www.theepochtimes.com/a-failure-of-trust-child-molestation-in-the-contra-costa-cp s_3058888.html. T.P. was also put overnight into a filthy crime ridden, drug and sex filled Adult Homeless Shelter. T.P. believed his life was in danger, under such County 'care', negligent supervision. T.P. still suffers from this unimaginable stress.

10. T.P. and Wood have filed proof that Contra Costa County blocked transcripts. Evidence of such "omissions" of records has been filed in case 21-15085.

11. T.P. and Wood have shown numerous attempts to obtain Discovery, and only partial discovery has ever been provided. All attempts to obtain medical records of H.P. from 2017-2020 have been flatly refused by the county, specifically Judge Barbara Hinton and the disgraced former, forced into retirement Judge Lois Haight.

12. T.P. asserts that he has a U.S. Constitutional right to know what has been alleged against Wood and or T.P. yet this has been repeatedly denied. Proof that social worker Acacia Chidi was allowed to testify off record and that Wood was denied even a "read back" requested by Wood's attorney, to know the allegations was refused. This is on transcripts by Judge Barbara Hinton and is violation of the U.S Constitution. Sixth Amendment, states **citizens have a "right to know who your accusers are and the nature of the charges and evidence against you".** County Court appointed private-pay attorney Mary Carey ("Carey") blocked beneficial evidence that Wood has emails proving this evidence was sent to Carey before the hearing and that Carey promised to admit Wood's beneficial evidence however intentionally did not do so. Carey earns much (if not all) of her living wages from the county court referral streams, and is advertised on county websites for referral business, was also allowed to testify against Wood - without Wood being allowed to hear. These testimonies need to be stricken from the record, as T.P. and Wood was unable to respond to allegations that were made off of the record. The U.S. Constitution Sixth Amendment does not allow for this practice. Wood and Packwood were denied access to see, question, or examine all evidence admitted against them until after the Jurisdictional Trial. These are U.S. Constitutional violations and as such the Jurisdiction Trial is unlawful and all decisions rendered from that Trial are invalid. Invalid Judgements. Emailed evidence pre-trial beneficial evidence sent to Carey, has been filed in case 21-15085. Records of "ex-parte" and non-noticed temporary restraining order ("TRO") never even process served to Wood, violating

Wood's civil rights. This matter involving social worker Acacia Chidi has been filed in case 21-15085.

13. Contra Costa County has admitted in transcripts that they have "budget" constraints, money concerns or financial issues.

14. Wood was not allowed an attorney of her choice. Wood tried numerous to fire Carey and was not permitted to. Everything that violated Woods rights and detained or delayed the release of T.P. caused harm to both Wood and T.P. Wood was forced to work with Mary P. Carey (""Carey"). Carey never disclosed that all or most of her income comes from the county and that the county advertises Carey upon their websites. A preferred relationship exists and Carey had a "duty to disclose" it. Carey never did. Carey was a private-pay $450 per hour lawyer - who conspired with the county to block Woods' beneficial evidence. Wood has submitted proof that beneficial evidence was emailed to Carey - and Carey blocked it. Additionally Carey admitted hearsay against Wood without any challenge, not allowing Wood to see, question, nor examine any of it. This is clear and corrupt ineffective counsel. Carey is shown on court records and as soon as she was hired, without consulting Wood to request to "block all visitation" while Wood was not present - despite being paid by Wood and representing Wood for purposes of their family reunification. Disgustingly, Carey stated on transcript records that Carey knew this was going to harm the children but wanted to do it anyhow. "Do no harm to your clients", is a Lawyer's standard. Carey is an embarrassment to the legal community. Carey also behind closed doors and to benefit the county's lucrative interest in child retention, testified against Wood. Carey violated "attorney client privilege". Carey needs sanctions and to lose her Bar license, so that she is unable to victimize more of her clients. T.P. and Wood has no idea what was said, other than the known malice of Carey to protect her financial cash stream of business from the county, that Carey relies upon for her sustenance. Carey filed a request for Wood to be a "vexatious litigant" even though Wood does not come close to meeting any such standard. Wood is merely a mother fighting court corruption and perjury to protect her beloved county-kidnapped children who are being molested and psychotropic drugged, within the county system. Show Carey's testimony - as is U.S. Constitutionally required to know what is being accused and to the right to confront one's accusers.

15. Wood completed and submitted her approved her family reunification case plan. It was acknowledged as acceptable and submitted into the county - yet at a later date the county-hired counselors stated they refused to accept it. Anything against the county's financial interests was either blocked or not permitted to be admitted. Plaintiff will be submitting additional evidence on this matter. That should not have been permissible. Contra Costa County went to great lengths to change the doctors' "perspectives" to be more 'in line with the County's own opinions of Wood'. Harassment of Wood's doctors Dr DeManes and Dr Dahl included being illegally subpoenaed - without Wood's written permission and retaliation. HIPAA violations by a county employee lawyer (Patricia Lowe) who would know the illegality of her actions, punishes with jail sentences and fees. Dr. DeManes was removed from the county's therapy programs (essentially he was fired) following his refusal to back away from his glowing assessments of Wood. This is a HIPAA law violation and Patricia Lowe broke the law. E-mail evidence against Patricia

Lowe has been filed with the court case 21-15085. Patricia Lowe has no known Medical training or expertise, to counsel a doctor to change his medical recommends on demand from the county. The doctor recommended family reunification therapy has still not occurred.

16. T.P. and Wood were denied Due Process Under the 14th Amendment of the U.S. Constitution and their civil Bill of Rights. Rights to Liberty, Freedom, and Property have been violated. T.P. suffers continuous trauma from the crimes committed against him and his mother.

17. County has a requirement to attempt family reunification and this was not followed, rather it was maliciously violated. Wood was denied all visits with H.P. who called home saying he was being medicated and wanted to commit suicide if H.P. was not permitted to return to his family. There was never one physical visit with H.P. and his mother, now going on five years.Wood and T.P. have not seen K.P. in more than a year and no visits were permitted unless Wood gave up under duress her rights to cross-examine K.P. who conflicted or retracted many of her alleged statements. K.P. said she was told by CPS Social workers what she had to say to avoid punishments. K.P. wrote letters to Wood at visits saying K.P. wanted to be returned home and did not want to be adopted. K.P. was in fear of her foster care "family" citing she saw "evil" in foster mom's eyes. H.P. filed a written (and orally spoken claim of H.P.'s when H.P. was lucid from drugging and able to place a phone call home. This was heard by both Plaintiff's Wood and T.P.) that the judge and his lawyer "would not allow him to return home". All siblings being drugged, and forcibly made to commit suborned perjury was witnessed numerous times by T.P. H.P. also has spoken out on record of being suicidal, which was never a concern until they both were taken by illegal seizure of Contra Costa County and their state agents. K.P. has also spoken out of being suicidal within county supervised foster care, but never beforehand. H.P. was mentally institutionalized in October 2017 on a "51/50" and "72 hour hold". None of these were issues when H.P. was in the care of his loving mother. All of these proofs have been filed in case 21-15085.

18. T.P. and Wood have submitted that Wood's children were illegally kidnapped and then transported interstate by the county over various state borders, without authority and without Wood's permission. This constitutes county's trafficking of minor children.

19. K.P. was made to repeat a school year for poor school attendance in her first and or second foster home which was found to be in "crisis" after Wood learned a biological child of that home was not properly supervised and thus drowned. K.P. stated on video tapes that she was beaten, slapped and abused, in her Foster Care. Article containing a video tape of K.P. was also filed with this court, Case 21-15085. Photo of K.P. bruise also filed, same case.

20. Federal Appeals cases 21-15085 and 21-16183 are both related cases and all filings made in either case, apply to both cases.

21. All Defendant parties of the original Federal complaints and lawsuits under Judge M. Chesney who were dismissed, were done so in error and as such, must be fully reinstated as Defendants. They had all been served and each with perhaps exception of one, relinquished their opportunity to deny Wood and T.P.'s claims. A default judgement

in favor of Wood and T.P. should have been rightfully awarded. The Northern California Federal court erred.

22. Packwood and Wood request a lawful **Summary Judgement** against all Defendant parties. Those who never responded to the filed and process served summons and complaint, which includes all original Defendants, in Federal case 21-cv-00611, except Carey - who was the one Defendant who did respond. This is the law - and it has not been upheld. The Defendants are not above the law, nor privy to special exceptions. Case 21-cv-00611 is in appeals as case 21-16183. Judge Chesney erred not doing so.

23. Although Wood was wrongly blocked from admitting her beneficial evidence, before trial, Wood filed evidence that the county and its social workers committed perjury with their allegations, in violation of California State Law 821, 820.21.

24. Under Rule 60, https://www.law.cornell.edu/rules/frcp/rule_60 new evidence is allowed to be admitted that had been previously blocked pre-trials was procured, allowing for a new trial. Thus proving the perjurious claims made by the Bains and county social workers to justify the theft and criminal kidnapping of Wood's children, were all perjury lies. Wood showed her regular children dental and medical records (all children proven to be in outstanding health and care while with their mother), Safeway Grocery Store delivery to her home, proof that Wood's mother (maternal grandmother) was able to drive, that a second adult Paul Sumner was there, hired to cook and shop for Wood's family. There were no fleas, no faeces, no exigent dangers. All now known to be perjure the county and its state actors. There is no immunity in the county of perjury, under the same argument case law otherwise known as the **California State Law 821** and **"Right to Lie Case**

claimed "we didn't know you couldn't lie to the court" with different set of social workers proceeded to do the same type of perjury to unlawfully steal Wood's children. Related lawsuit, Fogerty vs Orange County (2007) returned the children - taken under the perjury of several social workers. https://imprintnews.org/subscriber-content/9th-circuits-epic-dis-caseworkers-right-lie-case/23746 established "whether social workers are legally immunize from perjury charges if they lie to the courts in order to remove children from their parents. This case was rendered in favor of the family and is the established case law outlawing this as criminal behavior. Contra Costa County is guilty of the same established perjury law matters. 9th Circuit US Court of Appeals for *Deanna Fogerty-Hardwick ("Fogerty-Hardwick") vs County of Orange (2017)* case No. 15-55563, the Plaintiff's children were returned and she received a judgement for damages. Fogerty-Hardwick's lawsuit of social workers committing perjury to steal biological children is nearly identical to Wood and T.P. vs Contra Costa County kidnapping lawsuit.

25. The original County Judge Lois Haight ("Haight") recused herself after a known personal family feud was uncovered, between those accused in her courtroom and her own family. Yet Haight's biased judgments and orders were permitted to stand. Haight was pushed into a disgraced retirement, quickly afterwards. Judge Barbara Hinton erred in this decision to not grant a requested De Novo to both the Jurisdictional and Depositional Orders. Hinton has declared her upcoming intentions on transcript, to bill Wood for comprehensive legal expenses incurred and the terminating of parental rights

without attempting the required "family reunification" and visitations, for the unlawful kidnapping and placement of Wood children. This is readily available information by a google search of Lois Haight Herrington and Packwood, with stated facts sourced from Wikipedia. A De Novo demands the retrial and invalidation of all such biased judicial orders, as are Judicially Noticeable. However only a 'six month review' was permitted in De Novo. With all underlining Judgements, wrongfully left intact, there was no opportunity for any differing outcome. **Nonsensically the "six month review" de novo was cited by Araceli Ramirez ("Ramirez") as a reason for overturning Wood's completed family reunification case plan - which had been previously accepted and admitted. Given that Wood submitted her approved and completed case plan during the Disposition hearings completed in October 2018, Ramirez made vacuous arguments to refuse the completed case plan. This was a common theme, block, and refuse Wood to admit evidence and or throw it out without valid reasoning.** Judge Barbara Hinton ("Hinton") allowed a temporary restraining order ("TRO") against Wood following the public discovery that the county social worker Acacia Chidi ("Chidi"). Chidi was handling Wood's children was a "violent repeated felon" who attacked and assaulted a police officer with a "deadly weapon" at an airport. The TRO was done "ex parte" per court transcripts. Chidi refused to remove herself from Wood's children and Chidi was asked several times to do so. Wood was 1. not noticed, 2. not permitted to attend and 3. not allowed to defend herself. This Judicial abuse has no place in American courts, and needs to be rectified. Hinton also put a Criminal Protective Order ("CPO") on Wood with no advanced notice, nor hearing, demanding Wood keep away from a foster care resource whom Wood never met, never contacted, could not identify, and Wood was never accused of contacting her. These are to protect a witness or a victim and the alleged protected party was neither a witness nor an alleged victim. Absolute judicial abuse. Unchecked vile criminal behavior, actions of Contra Costa County.

26. Denial of Religious Freedoms are protected by the U.S. Constitution. Neither H.P. nor K.P. are being raised in their family's religion. Wood has been threatened with imprisonment for speaking to the media. Wood suffered a TRO for doing so. This is outrageous, unacceptable and the plaintiffs will continue this fight for their family indefinitely.

27. Transcripts were denied to Wood and Packwood. Evidence of this was submitted showing the County Court had "omitted" records that were not beneficial to the County, thus denying the Plaintiffs access nor a fair defense. Proof of this has been filed in Case 21-15085

28. Financial crimes were perpetrated against H.P. (a minor child), Taylor's younger brother making it necessary to get a new social security number after about three or four years under county care and supervision.

29. Not providing needed medical care, as is mandated, by the Katie A settlement for H.P., a "Katie A" and "special needs", "handicapped" designated child.

30. T.P. states Wood has never hit or harmed any of her children. This was a big suborned and perjured lie forced upon the children by the county, state actors, and the Bains. T.P. was with or next to Wood at all times, and T.P. on the day of the alleged hitting of H.P..

T.P. has first hand knowledge that Wood never hit H.P. and T.P. testified H.P. had "old" bruises from their former nanny, who was fired and kicked out of the house over the incident. Former nanny and neighbor Bains tried to extort Wood for money threatening to spread lies if Wood did not pay Bains and former nanny off. Nanny was a nursing student and Bains a teacher both receiving special training on "CPS reporting" as "mandated reporter" professions. Nanny's extortion letter was submitted and filed in case 21-15085. Nanny's letter was submitted to the courts by Erica Bains. Wood was never shown this nor permitted to contest it in spite of the fact that it was an extortion. Erica Bains made false police reports against Wood, and Bains admitted in court filings to doing so. This is a felony penal code (felony, due to the level of damages incurred) violation **148.5 PC**. Erica Bains never received the requisite six months in jail, called for under this penal code.

31. Constitution al violations not permitting "Cross-examinations" of openly coerced witnesses, was not allowed by Judge Haight. Threat was made that there would be no visitations of K.P. with her family if K.P. was cross examined. Blatant coerced testimony under duress of child and no questioning carom Plaintiffs was Judicially ordered.

32. **County has a history of imposing minors in their custody into Juvenile Hall or solitary confinement, relevant case law where a settlement was reached against the county is *G.F et al vs. Contra Costa County et al (2013)*.** T.P. was placed in an Adult Homeless Shelter as a minor child unsupervised and isolated on his own, to survive or perish. The class of children in this case had Individualized Education Plans ("IEP"), as did "handicapped, special needs" H.P. and T.P. making them part of this protected class who would have been protected under this settlement agreement.

33. County social worker Edyth Williams ("Williams") perjured herself stating that H.P. was not wanting visits and then Williams was compelled to admit she was lying and in fact H.P. was wanting to be with family and open to visitations. Evidence of this has been filed in case 21-15085.

T.P. requests again for all 2017-2021 discovery to be promptly given, particularly on all medical records of his younger brother H.P. This is necessary and required by the Constitution to know who and what one is accused of, as protected by the Sixth Amendment.

Additionally T.P. claims he is entitled to know all testimony given against himself and or Wood. **T.P. requests an opportunity to respond to all such testimony.** Neither Wood nor T.P have committed any crimes (the county can not say the same). Any and all claimed adverse testimony done "behind closed doors" must be omitted, as it is a U.S. Constitutional violation to not know your accusers and their claims.

The county has been shown to produce coerced, suborned perjured testimony by force.

Wood and T.P. request to be provided with all claimed accusations and accusers so they may be legally confronted and addressed. The Sixth Amendment gives the Plaintiffs the right to know what they are accused of openly and by whom. This has not happened.

**Make the unknown alleged allegations known to both the accused and those affected, by such perjury.**

Free the Prisoners. Children should not be illegally raided out of their homes by municipal governments - because it is profitable for them to do so. Perjury of social workers and state actors can not be permitted to prevail in order to steal children. This can not be allowed. State Law 820.21 forbids this crime. Plaintiffs ask the court to uphold California State Laws 821 and 820.21.

T.P. maintains Wood and T.P. have a Fourteenth Amendment Constitutional right to live together as a family "without undue government interference", as is guaranteed in the U.S. Constitution. T.P. misses his siblings and is heart broken. Send the children back home to their family. Time to undue the malicious Municipal and state actors' (Bains) criminal actions greed and corruption, to financially enrich themselves.

Landmark Supreme Court case, *Tanzin vs Tanvir, 592 U.S.C. (2020)* states municipalities may be sued when that municipality infringes upon a person's civil rights.

H.P. and K.P. are being drugged and harmed. They both have been "suicidal" since their criminal county kidnapping - and this has been going on for five long years.

The severity of the County's and the Bains' damage resulting from criminal acts will remain with this family for their entire lives.

T.P. requests that his Federal complaints be made public, not sealed. T.P. is not a minor and this was court noticed last year. T.P. requested in writing several times to file in both cases 21-15805 and 21-16183, He was granted 21-16183 and herein asks that his case filings be applied to both 21-15085 and 21-16183, 9th Circuit cases.

The counties should not be paid incentives to place and adopt children. But they are. This bonus funded incentive blinds the municipal court system. All they see is a child commodity for sale. These funding incentives are in public records. We have a corrupt child kidnapping, where social workers have openly have stated their belief that lying in court records to "wrest children from their biological parents" is part of their business practice.

Wood and T.P. are in contract to produce a National distributed Documentary with two news reporters, on the 21-15085 and 21-16183 Federal cases matters and filings, which will be coming out and distributed around August 2022. T.P. is requesting a published court decision.

The Plaintiffs are protected by their First Amendment right to openly speak the truth. They fully intend to. T.P. and Wood's love for her children is far greater than the harm and threats of the county.

One Plaintiff now resides out-of-state, will be filing in that State, seeking the laws to be upheld.

Free the children.

Submitted,

*Taylor Packwood*

Taylor Packwood
May 3, 2022